IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| KEITH CARROLL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No: |
| v. | ) | |
| | ) | |
| | ) | |
| FIRST SAVINGS MORTGAGE | ) | |
| CORPORATION, | ) | |
| | ) | |
| Serve: Chief Executive | ) | |
| In His/Her Official Capacity | ) | |
| First Savings Mortgage Corporation | ) | |
| Headquarters | ) | |
| 8444 Westpark Drive | ) | |
| The Fourth Floor | ) | |
| McLean, Virginia 22102 | ) | |
| | ) | |
| Defendant. | ) | |

## **COMPLAINT**

The above-named Plaintiff, Keith Carroll, by counsel, states as his Complaint

against Defendant First Savings Mortgage Corporation ("Defendant"), the following:

## **INTRODUCTION**

1.     As recently recognized by the Supreme Court of the United States, "The

Internet's prevalence and power have changed the dynamics of the national

economy." *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2097 (2018) (noting that

in 1992, less than 2 percent of Americans had Internet access whereas today that

number is about 89 percent).  According to 2018 polling data, 89 percent of American

adults use the Internet.[1]  Indeed, one federal district court has noted that "few areas are more integral to 'the economic and social mainstream of American life,' than the Internet's websites."  *Del-Orden v. Bonobos, Inc.*, No. 17 Civ. 2744 (PAE), 2017 WL 6547902, at *9 (S.D.N.Y. Dec. 20. 2017); *United States v. Peterson*, 248 F.3d 79, 83 (2d Cir. 2001) ("Computers and Internet access have become virtually indispensable in the modern world of communications and information gathering.").

2.      According to recent U.S. Census data, approximately 8 million Americans describe themselves as disabled because they are visually-impaired.[2] Thus, depriving blind persons of equal access to commercial websites on the Internet would allow American businesses to treat blind persons as second-class citizens who can be segregated from the rest of American society, which is antithetical to the very purpose that motivated Congress to enact the ADA almost three decades ago.  " 'Congress found that 'historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and

---

[1] http://www.pewinternet.org/fact-sheet/internet-broadband/ (last visited July 30, 2018).  Indeed, 98 percent of adults between the ages of 18-29 use the Internet, and 97 percent of adults between the ages of 30-49 use the Internet.  *Id.*

[2] In 2016, an estimated 7.7 million Americans reported having a visual disability. http://www.disabilitystatistics.org/reports/acs.cfm?statistic=1
(last visited July 30, 2018).  The statistics were calculated by the Cornell University Yang Tan Institute using the U.S. Census Bureau's 2016 American Community Survey (ACS) Public Use Microdata Sample (PUMS) data.  The estimate is based on a sample of 3,085,278 persons who participated in the 2016 ACS.

pervasive social problem.' ' " *Del-Orden*, 2017 WL 6547902, at *9 (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674-75, 121 S. Ct. 1879 (2001) (quoting 42 U.S.C. § 12101(a)(2))). "Congress found that 'physical or mental disabilities in no way diminish a person's right to fully participate in *all aspects of society*, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination.'" *Del-Orden*, 2017 WL 6547902, at *9 (quoting 42 U.S.C. § 12101(a)(1) (emphasis added in *Del-Orden*). "After thoroughly investigating the problem, Congress concluded that there was a 'compelling need' for a 'clear and comprehensive national mandate' to eliminate discrimination against disabled individuals, and to integrate them 'into the economic and social mainstream of American life.'" *PGA Tour*, 532 U.S. at 675 (quoting S. Rep. No. 101-116, p. 20 (1989); H.R. Rep. No. 101-485, pt. 2, p. 50 (1990), U.S.C.C.A.N. 1990, pt. 2, pp. 303, 332). To remedy these ills, "Congress provided [a] broad mandate" in the ADA to effect the statute's "sweeping purpose." *Id.* "In a society in which business is increasingly conducted online, excluding businesses that sell services through the Internet from the ADA would[:] 'run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages ***available indiscriminately to other members of the general public***'". *National Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200 (D. Mass. 2012) (emphasis added) (quoting *Carparts Distrib.*

3

*Ctr. v. Auto Wholesaler's Ass'n*, 37 F.3d 12, 20 (1st Cir. 1994)).

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, for Plaintiff's claims arising under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181 *et seq*.

4.      Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b)(1)-(3) because Defendant' s principal place of business is located in this District; Plaintiff resides in this District; a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District; and Defendant is subject to personal jurisdiction in this District.

## THE PARTIES

5.      Plaintiff is an adult resident of Virginia.  Plaintiff is *sui juris,* is permanently blind and uses a screen reader in order to access the internet and read website content, and thus qualifies as an individual with disability as defined by the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12102(2), 28 C.F.R. 36.104. Plaintiff is interested in seeking a loan to purchase a home, and went to Defendant's website, www.firstsavingsmortgage.com, to review possible loans and perhaps to apply for one.   But despite several attempts to use and navigate firstsavingsmortgage.com, Plaintiff has been denied the full use and enjoyment of the facilities and services of firstsavingsmortgage.com as a result of accessibility barriers

on firstsavingsmortgage.com.  The access barriers on firstsavingsmortgage.com have caused a denial of Plaintiff's full and equal access multiple times in the past, and have deterred Plaintiff on a regular basis from accessing Defendant's website.  Similarly, the access barriers on firstsavingsmortgage.com have deterred Plaintiff from visiting Defendant's Virginia mortgage office locations.

6.      While Plaintiff genuinely wants to avail himself of Defendant's home loan and banking services, Plaintiff has dual motivations:  he is also a "tester," which one federal court has defined to be "individuals with disabilities who visit places of public accommodation to determine their compliance with Title III [of the ADA]." *Harty v. Burlington Coat Factory of Penn., L.L.C.*, Civil Action No. 11-01923, 2011 WL 2415169, at *1 n.5 (E.D. Pa. June 16, 2011).   Indeed, it is widely accepted that "testers" such as Plaintiff advance important public interests and should be "praised rather than vilified."  *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006).  Plaintiff has filed multiple lawsuits against various operators of commercial websites under Title III of the ADA as part of his advocacy work on behalf of the civil rights of visually-impaired persons.  Plaintiff intends to continue to engage in such advocacy work into the foreseeable future to ensure that Defendant's commercial website and others are fully and equally enjoyable to and usable by visually-impaired persons including himself.

7.      Plaintiff is informed and believes, and thereon alleges, that Defendant

First Savings Mortgage Corporation is a Virginia corporation with its principal place of business located in McLean, Virginia.  Plaintiff is informed and believes, and thereon alleges, that Defendant owns and operates mortgage loan locations in the Eastern District of Virginia and elsewhere in the National Capital Region.  These locations constitute places of public accommodation.  Defendant's locations provide to the public important goods and/or services.  Defendant also provides to the public the firstsavingsmortgage.com website.  Firstsavingsmortgage.com provides access to Defendant's array of services, including access to its mortgage loan locations, descriptions of its amenities and services, including its home loans and other financial products, and many other benefits related to these facilities and services.  Defendant's locations are public accommodations within the definition of Title III of the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181(7).  Firstsavingsmortgage.com is a service, privilege, and advantage and accommodation of Defendant's services and locations.   Firstsavingsmortgage.com is a service, privilege, advantage, and accommodation that is heavily integrated with these locations.

8.     At all times relevant to the Complaint, Defendant was acting through its agents, servants and/or employees.

## I.  FACTUAL BACKGROUND

### Applicability of the ADA to Commercial Websites

9.     The Internet has become a significant source of information, a portal and tool for conducting business, and a means for doing everyday activities such as shopping, banking, etc. for both the sighted and blind, and/or visually-impaired persons.

10.     Blind individuals may access websites by using keyboards in conjunction with screen-reading software that vocalizes visual information on a computer screen.  Screen access software provides the only method by which a blind person may independently access the internet.  Unless websites are designed to be read by screen reading software, blind persons are unable to fully access websites and the information, products and services contained thereon.

11.     The international website standards organization, W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0").  WCAG 2.0 are well-established guidelines for making websites accessible to blind and visually-impaired people.  These guidelines are successfully followed by numerous large business entities to ensure their websites are accessible.  These guidelines recommend several basic **components** for making websites accessible including, but not limited to:  adding invisible alternative text to graphics; ensuring that all functions can be performed using a keyboard and not just a mouse; ensuring that image maps are accessible; and adding headings so that blind people can easily

7

navigate websites. Without these very basic components, a website will be inaccessible to a blind or visually-impaired person using a screen reader.

12.    Within this context, numerous federal courts have recognized the viability of ADA claims against commercial website owners/operators with regard to the accessibility of such websites.   *See, e.g.*, *Carroll v. Fedfinancial Fed. Credit Union*, -- F. Supp. 3d --, Civil No. 2018 WL 3212023, at *4-*7 (E.D. Va. June 25, 2018); *Castillo v. Jo-Ann Stores, LLC*, 286 F. Supp. 3d 870, 874-83 (N.D. Ohio Feb. 13, 2018); *Gathers v. 1-800-Flowers.com, Inc.*, Civil Action No. 17-cv-10273-IT, 2018 WL 839381, at *2-*5 (D. Mass. Feb. 12, 2018); *Robles v. Yum! Brands, Inc. d/b/a Pizza Hut*, Case No. 2:16-cv-08211-ODW(SS), 2018 WL 566781, at *3-*8 (C.D. Cal. Jan. 24, 2018); *Frazier v. E.L.I. Trading, Inc. d/b/a Mica Bella Cosmetics*, Case Nos. 2:16-cv-01898-AJS (lead case); 2:17-cv-00024-AJS (member case) [Dkt. 191] (W.D. Pa. Jan. 11, 2018); *Del-Orden v. Bonobos, Inc.*, No. 17 Civ. 2744 (PAE), 2017 WL 6547902, at *3-*15 (S.D.N.Y. Dec. 20, 2017); *Rios v. New York & Co., Inc.*, Case No. 2:17-cv-04676-ODW (AGRx), 2017 WL 5564530, at *2-*7 (C.D. Cal. Nov. 16, 2017); *Access Now, Inc. v. Blue Apron, LLC*, Civil No. 17-cv-116-JL, 2017 WL 5186354, at *2-*11 (D.N.H. Nov. 8, 2017); *Gorecki v. Dave & Buster's Inc.*, Case No. CV 17-1138 PSG (AGRx), 2017 WL 6371367, at *2-*6 (C.D. Cal. Oct. 10, 2017); *Reed v. CVS Pharmacy, Inc.*, No. CV 17-3877-MWF (SKx), 2017 WL 4457508, at *3-*6 (C.D. Cal. Oct. 3, 2017); *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 387-405 (E.D.N.Y. Aug. 1, 2017) (Weinstein, J.); *Thurston v. Chino Commercial Bank, N.A.*, No. CV 17-01078 BRO (JCx), 2017 WL 3224681, at *5 (C.D. Cal. July 27, 2017) (citing *Gorecki v.*

*Hobby Stores, Inc.*); *Markett v. Five Guys Enterprises LLC*, No. 1:17-cv-00788-KBF, 2017 WL 5054568, at *2-*3 (S.D.N.Y. July 21, 2017); *Frazier v. Cogo's, Co.*, Case Nos. 2:16-cv-01898-AJS (lead case); 2:17-cv-00091-AJS (member case) [Dkt. 171] (W.D. Pa. June 27, 2018) (consent decree); *Gorecki v. Hobby Lobby Stores, Inc.*, No. 2:17-cv-01131-JFW-SK, 2017 WL 2957736, at *3-*7 (C.D. Cal. June 15, 2017) (Walter, J.); *id.* at *7 ("[T]his is a relatively straightforward claim that [defendant] failed to provide disabled individuals full and equal enjoyment of goods and services . . . by not maintaining a fully accessible website.  There is nothing unique about this case, as federal courts have resolved effective communication claims under the ADA in a wide variety of contexts-- including cases involving allegations of unequal access to goods, benefits and services provided through websites."); *Gil v. Winn-Dixie Stores, Inc.*, 257 F. Supp. 3d 1340, 1343-51 (S.D. Fla. June 13, 2017) (finding that the defendant, a large supermarket chain, had violated the plaintiff's rights under the ADA by failing to maintain an accessible website after a non-jury trial), *appeal docketed*, No. 17-13467 (11th Cir. Aug. 1, 2017); *Gniewkowski v. Lettuce Entertain You Enters., Inc.*, 251 F. Supp. 3d 908 (W.D. Pa. 2017); *OmahaSteaks.com, Inc. v. Access Now, Inc., et al.*, No. 8:17-cv-00060-LSC-CRZ [Dkt. 9-1] (D. Neb. Apr. 17, 2017) (consent decree); *Access Now, Inc., et al. v. Omahasteaks.com, Inc.*, Nos. 2:16-cv-01898-AJS (lead case), 2:17-cv-00269-AJS (member case) [Dkt. 99] (W.D. Pa. Apr. 11, 2017) (consent decree); *Gil v. Winn-Dixie Stores, Inc.*, 242 F. Supp. 3d 1315, 1317-21 (S.D. Fla. 2017); *Nat'l Ass'n of the Deaf v. Harvard Univ.*, Case 3:15-cv-30023-MGM, 2016 WL 3561622, at *12-*20 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.) (recommending the

denial of a motion to dismiss or stay predicated on the primary jurisdiction doctrine), *adopted in Nat'l Ass'n of the Deaf v. Harvard Univ.*, 2016 WL 6540446, at *1-*3 (D. Mass. Nov. 3, 2016) (Mastroianni, J.); *Nat'l Ass'n of the Deaf v. Massachusetts Inst. of Tech.*, Case 3:15- cv-30024-MGM, 2016 WL 3561631, at *1 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.)(recommending the denial of a motion to dismiss or stay predicated on the primary jurisdiction doctrine), *adopted in Nat'l Ass'n of the Deaf v. Massachusetts Inst. of Tech.*, 2016 WL 6652471, at *1 (D. Mass. Nov. 4, 2016) (Mastroianni, J.); *Edward Davis v. Orlando Wilshire Investments Ltd., et al.*, No. 5:15-cv-01738-MWF-KK, [Dkt. 17 at 10] (C.D. Cal. Nov. 2, 2015) (Fitzgerald, J.); *Nat'l Fed'n of the Blind v. Scribd, Inc.,* 98 F. Supp. 3d 565, 576 (D. Vt. 2015); *James Patrick Brown v. BPS Direct, LLC, et al.*, Case No. LACV 14-04622 JAK (JEMx), [Dkt. 30 at 4-7] (C.D. Cal. Oct. 6, 2014) (Krondstadt, J.); *Penney v. Kohl's Dep't Stores, Inc., et al.*, No. 8:14-cv-01100-CJC-DFM [Dkt. 12 at 3] (C.D. Cal. Sept. 23, 2014) (Carney, J.); *National Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200-02 (D. Mass. 2012); *Shields v. Walt Disney Parks and Resorts US, Inc.*, 279 F.R.D. 529, 559 (C.D. Cal. 2011) ("The lack of a widely accepted standard for website accessibility does not preclude injunctive relief that would improve access to Defendants' websites by the visually impaired."); *Nat'l Federation of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006) ("To limit the ADA to discrimination in the provision of services occurring on the premises of a public accommodation would contradict the plain language of the statute."); *Brintley v. Aeroquip Credit Union*, Case No. 17-13912 [Dkt. 37] (E.D. Mich. Aug. 30,

2018); *Brintley v. Belle River Community Credit Union*, Case No. 17-13915 [Dkt. 38] (E.D. Mich. Aug. 30, 2018); *Gomez v. General Nutrition Corp.*, No. 1:17-cv-22747-MGC [Dkt. 62] (S.D. Fla. Aug. 29, 2018); *Reed v. 1-800-Flowers.com, Inc.*, -- F. Supp. 3d --, No. 2:17-cv-05713 (ADS)(AYS), 2018 WL 4054879, at *4-*9 (E.D.N.Y. Aug. 24, 2018); *Tawam v. APCI Fed. Credit Union*, No. 5:18-cv-00122, 2018 WL 3723367, at *3-*8 (E.D. Pa. Aug. 6, 2018); *Haynes v. Dunkin' Donuts LLC*, -- Fed. Appx. --, 2018 WL 3634720, at *2 (11th Cir. July 31, 2018); *Brintley v. Aeroquip Credit Union*, -- F. Supp. 3d --, Case No. 17-13912, 2018 WL 3497139, at *2-*7 (E.D. Mich. July 20, 2018); *Brintley v. Belle River Community Credit Union*, Case No. 17-13915, 2018 WL 3497142, at *2-*7 (E.D. Mich. July 20, 2018)..

## The Inaccessibility of Defendant's Website to the Visually-Impaired

13.    Defendant offers the commercial website, firstsavingsmortgage.com, which provides, as set forth above, a breadth of information concerning the mortgage loan office locations it operates, information and descriptions of its financial products, including home loans, and other amenities and services, privileges, advantages, and accommodations, and allows users to find the mortgage loan office locations for them to visit.

14.    Based on information and belief, it is Defendant's policy and practice to deny blind users, including Plaintiff, equal enjoyment of and access to firstsavingsmortgage.com.  Due to Defendant's failure and refusal to remove access barriers on firstsavingsmortgage.com, Plaintiff and other blind and visually impaired individuals have been denied equal enjoyment of and access to Defendant's mortgage

loan office locations and to the other services, advantages, privileges, and accommodations offered to the public through firstsavingsmortgage.com.

15.    Defendant denies blind individuals equal enjoyment of and access to the services, privileges, advantages, and accommodations and information made available through firstsavingsmortgage.com, including information concerning home loans, by preventing them from freely navigating firstsavingsmortgage.com. Firstsavingsmortgage.com contains access barriers that prevent free and full use by Plaintiff and other blind persons using screen reading software.

16.    Firstsavingsmortgage.com's barriers are pervasive and include, but are not limited to, the following:

(1) Empty or missing form labels which present a problem because if a form control does not have a properly associated text label, the function or purpose of that form control may not be presented to screen reader users. Form labels provide visible descriptions and larger clickable targets for form controls;

(2) Empty button.  A button is empty or has no value text.  When navigating to a button, descriptive text must be presented to screen reader users to indicate the function of the button;

(3) Empty links that contain no text causing the function or purpose of the link to not be presented to the user. This can introduce confusion for keyboard and screen reader users; and

(4) Redundant Links where adjacent links go to the same URL address which results in additional navigation and repetition for keyboard and screen reader users.

17.     Due to the inaccessibility of firstsavingsmortgage.com, blind and otherwise visually impaired customers who use screen readers have been hindered from effectively browsing for Defendant's locations, amenities and services, privileges, advantages, and accommodations that exist online unlike sighted users.  If firstsavingsmortgage.com were accessible, Plaintiff would independently and privately investigate Defendant's services, privileges, advantages, accommodations, amenities, and find the mortgage loan office locations to visit via Defendant's website as sighted individuals can and do.

18.     Despite several attempts to use firstsavingsmortgage.com in recent months in an effort to obtain a home purchase loan, the numerous access barriers contained on Defendant's website have denied Plaintiff's full and equal access, and deterred Plaintiff on a regular basis from accessing Defendant's website.  Similarly, based on the numerous access barriers contained on firstsavingsmortgage.com, Plaintiff has been deterred from visiting Defendant's physical mortgage loan office locations that Plaintiff would have located and visited by using firstsavingsmortgage.com.  Plaintiff continues to attempt to utilize Defendant's website and plans to continue to attempt to utilize such website in the near future. Plaintiff's dignitary interest as a disabled person has been harmed by Defendant's actions.

**COUNT I: Violations of the Americans with Disabilities Act, 42 U.S.C. §**

**12181 *et seq.***

19.     Plaintiff incorporates by this reference the allegations contained in the

preceding paragraphs as if fully set forth herein.

20.    Section 302(a) of Title III of the ADA, 42 U.S.C. § 12181 *et seq*., provides:  "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).

21.    Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations"; and "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden".  42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).  "A public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently

14

than other individuals because of the absence of auxiliary aids and services, unless the public accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense." 28 C.F.R. § 36.303(a). In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii).

22. Defendant's mortgage loan office locations are "public accommodations" within the meaning of 42 U.S.C. § 12181 *et seq*. Defendant generates millions of dollars in revenue from the sale of its products and services, privileges, advantages, and accommodations in Virginia through its mortgage loan locations and related services, privileges, advantages, and accommodations and firstsavingsmortgage.com. Firstsavingsmortgage.com is a service, privilege, advantage, and accommodation provided by Defendant that is inaccessible to patrons who are visually-impaired like Plaintiff. This inaccessibility denies visually-impaired patrons full and equal enjoyment of and access to the facilities and services, privileges, advantages, and accommodations that Defendant made available to the non-disabled public. Defendant is violating the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*., in that Defendant denies visually-impaired customers the services, privileges, advantages, and accommodations provided by firstsavingsmortgage.com. These violations are ongoing.

15

23.     Defendant's actions constitute discrimination against Plaintiff on the basis of a disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* in that:   Defendant has constructed a website that is inaccessible to Plaintiff; maintains the website in this inaccessible form; and has failed to take adequate actions to correct these barriers even after being notified of the discrimination that such barriers cause.

24.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Keith Carroll prays that this Honorable Court grant the following remedies:

1.     For a judgment that Defendant violated Plaintiff's rights under the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*;

2.     For preliminary and permanent injunctive relief pursuant to 42 U.S.C. § 12188(a)(1) and (2), requiring Defendant to:

   a.     ensure that its website, firstsavingsmortgage.com is easily accessible by individuals who are visually-impaired and who use computers, including laptops, tablets, and smartphones;

   b.     ensure that individuals who are visually-impaired have an equal opportunity to participate in and benefit from the goods, services, facilities, privileges, advantages, and accommodations provided through its website;

16

    c.        adopt and implement website accessibility policies which ensure that its website is fully and equally accessible to the visually-impaired;

    d.        require any third party vendors who participate on its website ensure that it is fully and equally accessible to the visually-impaired;

    e.        make publicly available, and provide a direct link on the homepage of its website, to a statement of Accessibility Policy to ensure that the visually-impaired have full and equal enjoyment of its website;

    f.        provide quarterly mandatory website accessibility training to all employees who write or develop programs or code for, or who publish final content to, its website, as to how to conform all web content and services with criteria to ensure that the visually-impaired have full and equal enjoyment of its website; and

    g.        conduct quarterly automated accessibility test of its website to identify any instances where the website is no longer in conformance with criteria that ensures that the visually-impaired have full and equal enjoyment of its website;

3.       For attorneys' fees and expenses pursuant to all applicable laws;

4.       For costs of suit; and

5.       A judgment for all such other relief as this Court deems just and proper.

Respectfully submitted,

/s/Thomas E. Strelka
Thomas E. Strelka, VA Bar No. 75488
L. Leigh R. Strelka, VA Bar No. 73355
STRELKA LAW OFFICE, PC
119 Norfolk Avenue, SW,
Warehouse Row, Suite 330
Roanoke, Virginia 24011
Phone: (540) 283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com


Scott J. Ferrell, Esq.
Victoria Knowles, Esq.
Pacific Trial Attorneys
4100 Newport Place Drive, Suite 800
Newport Beach, CA 92660
Phone: (949) 706-6464
Fax: (949) 706-6469
sferrell@pacifictrialattorneys.com
vknowles@pacifictrialattorneys.com

*Counsel for Plaintiff*